No. 24-3387

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Napoleon Patacsil, Michael Childs, and Noe Gamboa on behalf of
themselves and the Settlement Class

*Plaintiffs-Appellees*

v.

Google

*Defendants-Appellees*

v.

John Andren, Matthew Lilley, and Joseph St. John

*Objectors-Appellants*

Appeal from the United States District Court
for the Northern District of California

**BRIEF OF IOWA, ALABAMA, ALASKA, ARKANSAS, FLORIDA,
GEORGIA, IDAHO, INDIANA, LOUISIANA, MONTANA,
NEBRASKA, NORTH DAKOTA, OHIO, OKLAHOMA, SOUTH
CAROLINA, SOUTH DAKOTA, TENNESSEE, UTAH, VIRGINIA,
AND WEST VIRGINIA ATTORNEYS GENERAL AS *AMICI
CURIAE* IN SUPPORT OF OBJECTORS-APPELLANTS AND
REVERSAL**

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
(515) 281-4209 (fax)
September 18, 2024          eric.wessan@ag.iowa.gov

*Counsel for Amicus Iowa Attorney General's Office*

*(Additional counsel listed after signature block)*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................ii

TABLE OF AUTHORITIES ............................................................ iii

STATEMENT OF AMICUS CURIAE ...................................... 1

SUMMARY OF ARGUMENT ..................................................... 3

ARGUMENT ................................................................................... 5

   I.   This *cy pres*-only settlement cannot pass muster under Rule 23. ..5

    A.   Class action settlements require a direct benefit to the class. ....5

    B.   This settlement class received no direct or indirect benefit.........8

    C.   Even if *cy pres* can be appropriate in some class action settlements, it is not appropriate here. ............................................. 10

   II.  The Court must confirm that settlements with disproportionate attorney feel allocations are not fair, reasonable, or adequate under Rule 23........................................................................................... 12

CONCLUSION ........................................................................... 17

CERTIFICATE OF COMPLIANCE ....................................... 20

CERTIFICATE OF SERVICE................................................. 20

# TABLE OF AUTHORITIES

Cases

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................ 10

*Fraley v. Facebook Inc.,*
2012 WL 5835366 (N.D. Cal. Aug. 17, 2012) ................................ 15, 16

*Fraley v. Facebook, Inc.,*
966 F. Supp. 2d 939 (N.D. Cal. 2013) .................................... 16

*Frank v. Gaos,*
586 U.S. 485 (2019) ...................................................... 11, 15, 16

*In re Agent Orange Prod. Liab. Litig.,*
818 F.2d 216 (2d Cir. 1987) .............................................. 19

*In re Baby Prods. Antitrust Litig.,*
708 F.3d 163 (3d Cir. 2013) .................................... 10, 11, 17, 18

*In re Bluetooth Headset Prods. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011) .................................... 17, 19, 20

*In re Dry Max Pampers Litig.,*
724 F.3d 713 (6th Cir. 2013) ............................................ 19

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Limb. Litig.,*
55 F.3d 768 (3d Cir. 1995) .......................................... 18, 19

*In re Google Inc. St. View Elec. Commc'ns Litig.,*
21 F.4th 1102 (9th Cir. 2021) ................................... 8, 11, 12

*In re Google Plus Profile Litig.,*
2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ............................. 15

*In re Google Referrer Header Priv. Litig.,*
869 F.3d 737 (9th Cir. 2017) ............................................ 12

*In re Google Referrer Header Priv. Litig.,*
2023 WL 6812545 (N.D. Cal. Oct. 16, 2023) .......................... 15

*In re HP Inkject Printer Litig.,*
716 F.3d 1173 (9th Cir. 2013) .......................................... 18

*In re Sw. Airlines Voucher Litig.,*
799 F.3d 701 (7th Cir. 2015) ....................................... 18, 19

*In re Thornburg Mortgage, Inc. Sec. Litig.,*
885 F. Supp. 2d 1097 (D.N.M. 2012) .................................. 10

*In re TJX Cos. Retail Sec. Breach Litig.,*
584 F. Supp. 2d 395 (D. Mass. 2008) ................................. 21

iii

*Int'l Precious Metals Corp. v. Waters*,
    530 U.S. 1223 (2000) ........................................................ 20

*Johnston v. Comerica Morty. Corp.*,
    83 F.3d 241 (8th Cir. 1996) ........................................... 18

*Klier v. Elf Atochem N. Am., Inc.*,
    658 F.3d 468 (5th Cir. 2011) ............................. 8, 10, 15

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ............................... 10, 13

*Lowery v. Rhapsody Int'l, Inc.*,
    75 F.4th 985 (9th Cir. 2023) ......................................... 20

*Marek v. Lane*,
    571 U.S. 1003 (2013) ...................................................... 12

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ............................... 14, 19

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ....................................... 20

*Schwarzschild v. Tse*,
    69 F.3d 293 (9th Cir. 1995) ......................................... 16

*Sourovelis v. City of Philadelphia*,
    515 F. Supp. 3d 321 (E.D. Pa. 2021) ...................... 14

*Strong U. BellSouth Telecomms., Inc.*,
    137 F.3d 844 (5th Cir. 1998) ....................................... 19

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ...................................... 20

*Weseley v. Spear, Leeds & Kellogg*,
    711 F. Supp. 713 (E.D.N.Y. 1989) ........................... 18

Statutes

28 U.S.C. § 1715 .................................................................... 6

iv

## STATEMENT OF AMICUS CURIAE

The Attorneys General of Iowa, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Louisiana, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Utah, Virginia, and West Virginia are their States' chief law enforcement or legal officers. Their interest here arises from two interrelated responsibilities.

*First*, Attorneys General are responsible for protecting their States' consumers. This nationwide settlement replaces money that could go toward making class members whole with awards to controversial political organizations. There is no reason why class members, individuals across the country that have a wide array of political views, should have money that should be going to compensate them for location tracking instead go to, for example, an organization advocating for specific sexuality related laws. There is no nexus there.

*Second*, they are responsible for protecting consumer class members under the Class Action Fairness Act, which creates a role for State Attorneys General in the class action settlement approval process. *See* 28 U.S.C. § 1715; *see also* S. Rep. No. 109-14, 2005 U.S.C.C.A.N. 3, 5 (requirement "that notice of class action settlements be sent to appropriate state and federal officials" exists "so that they may voice concerns if they believe that the class action settlement is not in the best

interest of their citizens"); *id.* at 35 ("[N]otifying appropriate state and federal officials . . . will provide a check against inequitable settlements"); *id.* ("Notice will also deter collusion between class counsel and defendants to craft settlements that do not benefit the injured parties.").

Attorneys General submit this brief to further those discrete interests and to protect consumers from class action settlement abuse. *See* Fed. R. App. P. 29(a)(2). Past efforts have produced meaningful settlement improvements for class members. *See, e.g., Cowen v. Lenny & Larry's Inc.*, No. 17-cv-01539, Dkts. 94, 110, 117 (N.D. Ill. amended settlement approved May 3, 2019) (amended settlement class cash recovery from $350,000 up to about $900,000 after government involvement); *Allen v. Simiasan Corp.*, No. 12-cv-376, Dkts. 219, 223, 257, 2611, 268 (S.D. Cal. settlement approved Aug. 17, 2017) (class cash recovery increased from $0 up to about $700,000 following State Attorney General coalition amicus brief and district court rejection of initial settlement); *Unknown Plaintiff Identified as Jane V., v. Motel 6 Operating LP*, No. 18-cv-0242, Dkts. 50, 52, 58, 63, 64, 75 (D. Ariz. amended settlement approved Aug. 2, 2019) (parties amended settlement agreement to increase minimum class member recovery from $50 to $75 and to remove class caps following Attorney General concerns about settlement distribution).

This Circuit has, in the past, approved *cy pres* only settlements. While this settlement is distinguishable, if this Court believes that earlier precedents require approval here then it should take the opportunity to go en banc and align its precedents with the requirements of federal law.

## SUMMARY OF ARGUMENT

This Court should vacate the settlement agreement entered below. The Parties agreed on a $62 million settlement in a data privacy class action arising out of Google's tracking and storing of 247.7 million mobile device users' location data. Yet that agreement gave class members no damages. Instead, most of the settlement fund was devoted to *cy pres* payments to third-party recipients that are not parties to the litigation. The rest of the funds were allocated to attorneys' fees, expenses, and administrative costs.

Rule 23 requires that class action settlements provide a direct benefit to the class. *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011). When a settlement fails to award damages to class members, there is no direct benefit. And without that direct benefit, certifying and approving a class action under Rule 23 serves only to aggregate and dismiss claims, rather than address the class's actual grievances.

The theory of "indirect benefit" cannot work. *See In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1123 (9th Cir. 2021) (Bade, J., concurring). That theory supposes that although class members do not receive damages from the settlement, they still benefit indirectly through the allocation of settlement funds to organizations that advance interests related to the class's claim. But a class receives no benefit from a settlement that directs funds to groups whose interests' conflict with, or are even opposed to, those of the class.

Disproportionate attorneys' fees also violate Rule 23. Here, the $18.6 million in attorneys' fees is misaligned with the interests of the class. Granting 30% of a $62 million settlement to attorneys, while the class receives nothing, is untenable when the class members themselves do not receive the other 70%. A 30% award is not per se unreasonable— but that 30% must be compared to the proper denominator of returns to the class. This settlement is better characterized as 100% of damages going to attorneys and third parties. That cannot stand. This Court should adjust the fee distribution to safeguard the interests of the class and prevent class counsel from benefiting at the expense of those they represent.

This *cy pres*-only settlement provides no direct benefit to class members and cannot be recognized as a superior way to adjudicate and resolve absent class members' claims under Rule 23(b)(3), or fair,

adequate, and reasonable under Rule 23(e)(3). This Court should vacate the settlement approval and declare that a court's first consideration must be the benefit to the class. The Attorneys General endorse that approach as giving consumers critical protection by aligning the interests of class counsel with those of the class.

## ARGUMENT

### I. This *cy pres*-only settlement cannot pass muster under Rule 23.

#### A. Class action settlements require a direct benefit to the class.

Any class action settlement under Rule 23(b)(3) must include a direct benefit to the class. *See Klier*, 658 F.3d at 475 ("very best use" of settlement funds is "benefitting the class members directly"). Without a direct benefit, a class action approved under Rule 23 acts to aggregate claims only to extinguish them. That defeats Rule 23's purpose. Rule 23 is to be "applied with the interests of absent class members in close view," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 629 (1997), and "is meant to provide a vehicle to compensate class members," *In re Thornburg Mortgage, Inc. Sec. Litig.*, 885 F. Supp. 2d 1097, 1105 (D.N.M. 2012).

The district court here approved the settlement agreement under the theory of *indirect* benefit. Dkt. 367 at 18. That theory supposes that although class members do not receive a direct benefit through damages

from the settlement, they still benefit indirectly through the allocation of settlement funds to organizations that advance interests related to the class's claim. *See, e.g., Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ("A cy pres remedy . . . is a settlement structure wherein class members receive an indirect benefit . . . rather than a direct monetary payment").

While the Ninth Circuit has seemingly approved of *cy pres*-only settlements in the past, it should limit that approval to those cases. An indirect benefit from a *cy pres*-only settlement does not satisfy the need for a *direct* benefit to the class. *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173 (3d Cir. 2013). Indeed, it fails to serve the class's interests as fair, reasonable, or adequate, and does not qualify as a superior method of adjudication under Rule 23. Any "indirect benefit" received by the class from *cy pres* "is at best attenuated and at worst illusory." *Id*. To the extent earlier holdings from this Court are incompatible with that finding in this case, the Court should take the opportunity to go en banc and align its precedents with Rule 23's requirements.

Justice Thomas agrees. In *Frank v. Gaos*, 586 U.S. 485 (2019), Justice Thomas said that a *cy pres*-only settlement should not have been approved. *Id*. at 494 (Thomas, J., dissenting). He explained that because the class members in that case "received no settlement fund, no meaningful injunctive relief, and no other benefit whatsoever in

exchange for the settlement of their claims, . . . the class action should not have been certified, and the settlement should not have been approved." *Id*. He also opined that "*cy pres* payments are not a form of relief to the absent class members and should not be treated as such [.]" *Id*. at 495.

Many jurists and commentators have expressed similar concerns about the theory of indirect benefit, including a member of this Court. *See In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th at 1123 (Bade, J., concurring) (collecting cases). Judges are skeptical whether "*cy pres* provisions actually provide an indirect benefit to class members." *Id*. That is especially true when "class members receive no benefit at all from a settlement that extinguishes their claims without awarding them any damages and instead directs money to groups whose interests are purportedly aligned with the class members." *Id*.

*Cy pres* is not an excuse for attorneys to pick their favorite organizations and to divert damages from consumers and class members to those organizations. Identified on the docket are dozens of organizations receiving tens of millions of dollars—many of which have conflicts of interest with the attorneys or have missions totally separate from the harms alleged here. *See* Dkt. 357 at 4–5. Many of those organizations take partisan and controversial views on issues relating to promoting racial discrimination, abortion, or transgenderism that have

7

little to do with the underlying location harms. *Id.* There can be no justification for diverting so much money that should be returned to consumers here.

This Court has upheld class action settlements that provided *cy pres* awards to third parties instead of damages for the class members. *See In re Google Referrer Header Priv. Litig.*, 869 F.3d 737 (9th Cir. 2017). But there are "fundamental" questions about "the use of [*cy pres*] remedies in class action litigation" that remain unanswered. *Marek v. Lane*, 571 U.S. 1003 (2013) (Roberts, C.J., respecting the denial of certiorari). Amid increasing skepticism, this Court should reconsider whether *cy pres* awards satisfy Rule 23 when the class receives no meaningful relief in exchange for their claims.

To the extent that this Court finds itself bound by earlier precedents allowing *cy pres* only settlements it should go en banc to reconsider that approach.

### B. This settlement class received no direct or indirect benefit.

Even if this Court upholds *cy pres*-only settlements on the theory of indirect benefit, no such benefit was conferred here. That is because many of the approved third-party recipients do not bear a "substantial nexus" to the interests of the class members. *Lane v. Facebook, Inc.*, 696 F.3d at 821. Instead, their efforts focus on environmental justice, abortion, and controversial positions on sex and sexuality. Not only are

those causes wholly unrelated to the class's data privacy claim, but many class members actively oppose them. Dkt. 357 at 4.

Indeed, these organizations include the ACLU, Free Press, and The Information Society Project at Yale. The ACLU, for example, proposes to use its resources to counter "attack[s on] reproductive and LGBTQ rights" and "build greater connection with racial justice, economic justice, and other issues." Dkt. 354 at 25. Free Press, who "bring[s] a civil rights and racial justice lens to legal and policy debates," has selectively focused on the deletion of location data for those visiting abortion clinics. *Id*. And the Free Information Society Project at Yale, acts as "an incubator of novel litigation strategies and legal theories designed to advance reproductive rights and justice," and would use the funding to focus on "algorithmic justice." *Id*.

These "powerful interest group[s]" that "conduct[] political activity in many fields wholly unrelated to privacy and technology" are not suitable recipients in this litigation. D. Brooks Smith, *Class Action and Aggregate Litigation: A Comparative International Analysis*, 123 Penn St. L. Rev. 303, 227 (2020). Indeed, "a *cy pres* award is not a vehicle by which the court, the parties, or counsel may use monies from the class settlement to propagate their own brand of social justice." *Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 321, 342 (E.D. Pa. 2021).

This Court should reverse the approved settlement agreement and remand with instructions to craft relief that accrues to the class members. If that proves impossible, this Court should still vacate and remand so the district court can reconsider third-party recipients who sustain a "substantial nexus" to the class member's interests and do not solely advance the social justice aims of the defendants and class counsel.

### C. Even if *cy pres* can be appropriate in some class action settlements, it is not appropriate here.

*Cy pres* is an improper remedy when it is feasible to make distributions to class members. *See, e.g., Pearson v. NBTY, Inc.*, 772 F.3d 778, 784 (7th Cir. 2014). "If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members." ALI *Principles of the Law of Aggregate Litigation* §3.07(a). The last resort rule follows from the idea that "[t]he settlement-fund proceeds, generated by the value of the class members' claims, belong solely to the class members." *Klier*, 658 F.3d at 474 (citing ALI Principles §3.07 cmt. (b)).

Distributing $62 million (less administrative costs and attorneys' fees) to this class is feasible. *Gaos*, 586 U.S. at 494 (Thomas, J., dissenting). Technological advancements and electronic payments have made distributing small sums to large classes easier and more cost-effective. Transcript of Preliminary Approval Hearing, *In re Google*

*Referrer Header Priv. Litig.*, 2023 WL 6812545, at *1 (N.D. Cal. Oct. 16, 2023). Indeed, the district judge in this case has approved similarly sized settlements.

*Google Referrer* is one example. In that case, the district court approved a settlement that distributed a $23 million fund (less administrative costs and attorneys' fees) to a class of about 193 million persons using a claims process. 2023 WL 6812545, at *1 (N.D. Cal. Oct. 16, 2023). 2.56 million class members submitted claims, for a claims rate of 1.33%. *Id*. And in *In re Google Plus Profile Litig.,* 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021), the district court approved a settlement that distributed a $7.5 million fund to a class of about 10 million members.

Other courts have approved similar settlements under a claims-made process. In *Fraley v. Facebook Inc.*, 2012 WL 5835366 (N.D. Cal. Aug. 17, 2012), a class of over 100 million Facebook users proposed a *cy pres*-only settlement, alleging that class distributions were "simply not practicable in th[e] case, given the size of the class." *Id*. at *2. The district court rejected that proposal because "[m]erely pointing to the infeasibility of dividing up the agreed-to $10 million recovery . . . is insufficient . . . to justify resort to purely cy pres payments." *Id*. Later, the agreement was then restructured as a claims-made settlement disbursing cash directly to class members, with the court ultimately augmenting the baseline $10

11

awards by 50%. *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 941 (N.D. Cal. 2013).

Rule 23(b)(3) gives Courts a superior means of delivering relief directly to a class—not a superior means for defendants to obtain an aggregate release at a discount price. If a claim of infeasibility is true, then a class action is not superior to other available methods of adjudicating the controversy under Rule 23(b)(3). *Gaos*, 586 U.S. at 494 (Thomas, J., dissenting). Superiority demands the possibility of class benefit at the time of certification. *Cf. Schwarzschild v. Tse*, 69 F.3d 293, 297 (9th Cir. 1995) (indicating that courts should not certify classes after a defendant prevails against named plaintiffs on the merits). But this settlement intends to release the class's rights in exchange for no compensatory relief. From the perspective of a class member, that cannot be a superior method of adjudicating this controversy.

Distributing $62 million to this class is feasible. If this Court determines it is not, then the class cannot be certified because a class action would be an inferior method of adjudicating the controversy under Rule 23.

## II. The Court must confirm that settlements with disproportionate attorney feel allocations are not fair, reasonable, or adequate under Rule 23.

The district court abused its discretion in awarding attorneys $18.6 million of the settlement fund. That award is 30% of the settlement fund

but significantly more than what will be received by the class. Allowing such fees to proceed ignores the legal principle that "class counsel should not be" "indifferent to whether funds are distributed to [class members] or to cy pres recipients" because the class should get precedence. *Baby Prods.*, 708 F.3d at 178. Plaintiffs settled for relief that, for the class, is largely illusory. *See* Dkt. 327 at 1. Class counsel's reliance on the injunctive relief to justify their disproportionate fee is misplaced, and that relief should not be credited as a class benefit.

Indeed, while attorneys should be compensated for the work they perform, courts should scrutinize settlement provisions and fee calculations that benefit attorneys at class members' expense. The class action settlement process already raises unique due process concerns and sometimes places class members at a disadvantage. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Class counsel has an incentive to obtain a large fee—a fee that comes from class members' pockets. *See, e.g., In re HP Inkject Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (explaining "interests of class members and class counsel nearly always diverge"); *see Baby Prods.*, 708 F.3d at 175 ("[C]lass actions are rife with potential conflict of interest between class counsel and class members."); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989) (identifying the need to protect the "[c]lass from whose pockets the attorney's fees will come[.]"); Charles

Silver, *Due Process and the Lodestar Method*, 74 Tulane L. Rev. at 1820 ("The Due Process Clause requires judges] to minimize conflicts between claimants and their representatives.").

Class action settlements require extra scrutiny because class members cannot rely on the usual adversarial relationship between the parties. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Limb. Litig.,* 55 F.3d 768, 819-20 (3d Cir. 1995). To a defendant, the class award and fee award "represent a package deal*." Johnston v. Comerica Morty. Corp.*, 83 F.3d 241, 264 (8th Cir. 1996). The defendant is "interested only in the bottom line: how much the settlement will cost." *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 712 (7th Cir. 2015). Because the defendant "is interested only in disposing of the total claim asserted against it,. . . the allocation between the class payment and the attorney's fees is of little or no interest to the defense." *In re Gen. Motors*, 55 F.3d at 819–20.

Defendants' indifference to settlement allocation often requires courts to look for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Dry Max Pampers Litig.* 724 F.3d 713, 718 (6th Cir. 2013); *In re Bluetooth*, 654 F.3d at 947 (same*); see also In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 224 (2d Cir. 1987) (explaining concern in isolating situations "in which the client's interests are somewhat encroached upon by the attorney's interests"). Judicial scrutiny also

14

"guards against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class." *Strong U. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998) (citing *In re General Motors*, 55 F.3d 768 at 820).

With that dynamic in mind, State Attorneys General regularly present their class action settlement concerns to help protect consumers from settlement abuse. The Attorneys General use CAFA notices to monitor class settlements and watch for settlement terms that undermine consumer interests. As repeat players in the class action process, Attorneys General can spot arrangements that reward attorneys for settlements that provide little or no meaningful value to class members. And then those Attorneys General are well placed to register their objections. Such settlements harm consumers and undermine their faith in class action's ability to provide meaningful recovery.

The ratio of class recovery to attorneys' fees in particular raises serious due process and fairness issues. *See, e.g., In re Sw. Airlines Voucher Litig.,* 799 F.3d 701, 712 (7th Cir. 2015); *Pearson*, 772 F.3d at 784; *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). There are "troubling consequences" of a settlement approach that does not require "some rational connection between the fee award and the amount of the actual distribution to the class." *Int'l Precious Metals Corp.*

*v. Waters*, 530 U.S. 1223, 1223 (2000) (O'Connor, J., respecting denial of certiorari) (advocating Supreme Court review "in an appropriate case").

The "central consideration" in any class action settlement is "what class counsel achieved for the members of the class" not "how much effort class counsel invested in the litigation." *Redman*, 768 F.3d at 633. "It does not matter that class action attorneys may have devoted hundreds or even thousands of hours to a case. The key factor in assessing the reasonableness of attorneys' fees is the benefit to the class members." *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 994 (9th Cir. 2023) (citing *In re Bluetooth*, 654 F.3d at 942).

Accordingly, "[t]he single most important action judges can take to support public goals of class action litigation is to reward class action attorneys only for lawsuits that actually accomplish something of value for class members and society." Deborah R. Hensler, et al., *Class Action Dilemmas: Pursuing Public Goals for Private Gain* 33 (RAND Inst. for Civil Justice 1999); *see also* Manual for Complex Litigation (Fourth) § 21.71 (2004). Monetary recovery for the class is "often the true measure of success," and should influence the fee award. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993).

Judges can—and should—improve consumer outcomes in class actions by tying attorneys' fees to claims made by class members. *See In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 406 (D. Mass.

2008). "This approach will not only encourage more realistic settlement negotiations and agreements, but also will drive class counsel to devise ways to improve how class action suits and settlements operate." *Id*.

Assessing attorneys' fees in relation to class awards will encourage class counsel to focus on the needs and desires of the class and devise better notice programs, settlement terms, and claims procedures. For example, making fees depend on the amount class members receive would encourage counsel to negotiate settlement terms with automatic payments rather than a claims process or to create simple claims processes requiring minimal or no additional documentation. *See Hensler*, at 491. Realigning those incentives will better protect consumers. To that end, this Court should vacate the settlement below.

## CONCLUSION

The district court abused its discretion in approving the settlement agreement here. Accordingly, this Court should vacate the settlement approval and declare that a court's primary consideration must be the value of the actual benefit to the class.

September 18, 2024                     Respectfully submitted,

                                      BRENNA BIRD
                                      Iowa Attorney General


                                      */s/ Eric Wessan*
                                      ERIC WESSAN

17

*Solicitor General*
Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
Phone: (515) 823-9117
eric.wessan@ag.iowa.gov

*Counsel for the State of Iowa*

## ADDITIONAL COUNSEL

Steve Marshall
Alabama Attorney General

Chris Carr
Attorney General of Georgia

Treg Taylor
Attorney General of Alaska

Raúl R. Labrador
Attorney General of Idaho

Tim Griffin
Attorney General of Arkansas

Theodore E. Rokita
Attorney General of Indiana

Ashley Moody
Attorney General of Florida

Liz Murrill
Attorney General of Louisiana

Austin Knudsen
Attorney General of Montana

Michael T. Hilgers
Attorney General of Nebraska

Drew Wrigley
Attorney General of North
Dakota

Dave Yost
Attorney General of Ohio

Gentner Drummond
Attorney General of Oklahoma

Alan Wilson
Attorney General of South
Carolina

Marty Jackley
Attorney General of South
Dakota

Jonathan Skrmetti
Attorney General of Tennessee

Sean D. Reyes
Attorney General of Utah

Jason S. Miyares
Attorney General of Virginia

Patrick Morrisey
Attorney General of West
Virginia

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Circuit Rule 32-1 because this brief contains 4,710 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Furthermore, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: September 18, 2024

*/s/ Eric H. Wessan*
Solicitor General

## CERTIFICATE OF SERVICE

The undersigned certifies that on the eighteenth day of September, 2024, this brief was electronically filed with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

*/s/ Eric H. Wessan*
Solicitor General
